## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITERS NORTH AMERICA, LLC
and UNITERS S.P.A.,

      Plaintiffs,

v.                                                            Case No: 8:21-cv-2381-CEH-AAS

SERVECO INTERNATIONAL, INC.,
SERVECO NORTH AMERICA, LLC,
FURNITURE PROTECTION
CONNECTIONS, INC., FURNITURE
SOLUTIONS NETWORK, LLC and
UNITERS GROUP, LLC,

      Defendants.

_____

### ORDER

This cause comes before the Court upon the Motions to Dismiss Counterclaims filed by Counter-Defendants Uniters NA, Uniters S.P.A., and Uniters Group (Docs. 23, 27) and the Responses in Opposition filed by Counter-Plaintiff Serveco North America, LLC ("SNA") (Docs. 35, 36). Also before the Court is a Motion to Dismiss filed by Defendant Furniture Solutions Network ("FSN") (Doc. 40) and SNA's Response in Opposition (Doc. 43). The Uniters entities and FSN each assert several grounds for dismissal.

Upon review and consideration, for the reasons set forth below, the Court will grant-in-part and deny-in-part all three motions. FSN's motion to dismiss is granted for lack of personal jurisdiction. The Uniters entities' motions are granted to the extent

that Counterclaim I is dismissed for failure to state a claim upon which relief may be granted.  The motions are otherwise denied.

## I.      BACKGROUND[1]

Uniters Group, LLC ("UG"), is a global manufacturer of home care and repair products and related services. Doc. 1 ¶ 11.  It operates in the United States through Uniters North America ("UNA"), a limited liability company, and in Europe through Uniters SpA ("USpA"), an Italian joint stock company. *Id.* ¶¶ 11, 6, 5.  UG produces a leather stain remover called INK LIFTER, which has been trademarked since 2001. *Id.* ¶¶ 13-14.

In October 2021, UNA and USpA filed a lawsuit against ServeCo International, Inc., SNA, and Furniture Protection Connections, Inc. ("FPC"), its competitors in the furniture protection field. *Id.* ¶ 15.  Both SNA and FPC, a corporation that is now dissolved, are affiliated with ServeCo International.  *Id.* ¶¶ 7-9.  UNA and USpA assert that the ServeCo entities knowingly sell a kit that bears a counterfeit INK LIFTER mark on its packaging and contains a leather cleaning product bearing the same

---

[1] When ruling on a motion to dismiss under Rule 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). With limited exceptions, the Court cannot look outside the pleadings in ruling on a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d).  Here, however, Uniters and FSN move to dismiss the counterclaims in the Amended Counterclaim on a variety of additional grounds besides failure to state a claim. For the sake of simplicity, the Court derives this factual background statement from the allegations in the Complaint (Doc. 1) and the Amended Counterclaim (Doc. 14), unless stated otherwise. To the extent that the Court considers other evidence and derives facts from that evidence, the Court discusses those facts in its analysis.

counterfeit mark. *Id.* ¶¶ 16, 17.  They allege claims of trademark infringement, false representation of origin, false representations under the Lanham Act, and a state law claim of unfair competition. *Id.* ¶¶ 33-66.

SNA filed a Counterclaim on December 23, 2021, which it amended on January 11, 2022. Docs. 10,  14.  In the Amended Counterclaim, SNA brings claims of cybersquatting and trademark infringement against several entities: UNA, UG, and Furniture Solutions Network ("FSN"). *Id.*[2] FSN, a direct competitor of SNA, is a wholly owned subsidiary of UG. *Id.* ¶¶ 6, 15, 20.  SNA alleges that FSN is in partnership with UNA. *Id.*

SNA conducts its furniture repair business through the domain name www.serveco.com. *Id.* ¶ 12.  It contends that its name, SERVECO, is a protected mark that is "well known and distinctive" and has gained secondary meaning through exclusive and continuous use in commerce during the last five years. *Id.* ¶¶ 13-14, 38.

An unknown entity registered the domain name www.serveco.net on July 4, 2018. *Id.* ¶ 16.  From that date until the time SNA filed its counterclaims, the domain name automatically redirected to www.fsnpro.com, which is the website through which FSN conducts business. *Id.* ¶¶ 15, 17-19.  SNA asserts that FSN, UG, and UNA registered and used the domain name with a bad faith intent to profit through its

---

[2] SNA initially filed a third counterclaim for false designation of origin and included USpA among the counter-defendants for all three counterclaims. *See* Doc. 14.  SNA subsequently indicated its intent to dismiss Counterclaim III and all counterclaims against USpA. Doc. 35 at 3; Doc. 36 at 3.  These claims and any related arguments will therefore be disregarded for the purpose of this Order.

commercial use. *Id.* ¶¶ 21-24.  They have caused significant damage to SNA by redirecting customers looking for SNA to their own website that sells competing services. *Id.* ¶¶ 21, 26.  In Counterclaim I, SNA asserts that they have violated the Anticybersquatting Protection Act ("ACPA"), 15 U.S.C. § 1125(d); in Counterclaim II, SNA asserts that they are liable for a violation of 15 U.S.C. § 1125(a).

UNA, UG, and FSN now move to dismiss both counts of the Amended Counterclaim. Docs. 23, 27, 40.  UNA and UG[3] contend that SNA lacks standing to assert the counterclaims against them, that it has failed to state a claim for either counterclaim, and that the Court should not exercise supplemental jurisdiction to hear the counterclaims, which are permissive rather than compulsory.  FSN asserts that this Court does not have personal jurisdiction over it, that venue is improper and the counterclaims have been misjoined, and that extrinsic evidence proves dismissal is warranted under Rule 12(b)(6).  FSN also echoes the other Counter-Defendants' argument regarding permissive counterclaims.  Each of these arguments will be addressed in turn.

## II.     DISCUSSION

### A. UNA's and UG's Challenge to Standing is Denied Without Prejudice.

First, UNA and UG argue that SNA lacks standing to bring its counterclaims and dismissal is required for lack of subject matter jurisdiction under Rule 12(b)(1) of

---

[3] The motions filed by UNA and UG are nearly identical to each other, as are SNA's responses to these motions.  The Court will primarily cite to the motion filed by UNA at docket entry 23 and SNA's response at docket entry 35, unless UG's motion or the corresponding response substantively differ.

the Federal Rules of Civil Procedure. Doc. 23 at 8-13.[4]  According to UNA and UG, SNA has failed to establish that it has suffered an injury in fact because its mark was not distinctive at the time the challenged domain was registered. Doc. 23 at 10. Further, they assert that SNA has not established a plausible connection between any alleged conduct by UNA or UG and the alleged harm to SNA with respect to either counterclaim. *Id.* at 10-13.  In fact, the domain was registered before FSN became a subsidiary of UG. *Id.* at 11.  UNA and UG also cite to the attached Declarations of Claude Bonvouloir, the executive vice president of both entities, who affirms that neither entity used the domain name itself nor was connected to FSN's alleged use of the name. Docs. 23-1, 28.  UNA and UG assert that the declarations provide "incontrovertible evidence" that defeats standing. Doc. 23 at 11-13.

SNA responds that it does have standing to sue UNA and UG.  It suffered an injury in fact because its mark is inherently distinctive under trademark law. Doc. 35 at 5-6.  With respect to causation, its pleadings establish enough of a relationship between FSN, UNA, and UG for the latter two entities to be either jointly or vicariously liable for FSN's misconduct. *Id.* at 6-10.  SNA contends that it should be provided the opportunity to take discovery on outstanding questions regarding the relationship between the three entities and their respective liability in response to the Counter-Defendants' factual challenges. *Id.* at 7, 9-10.

---

[4] The cited page numbers in this Order correspond with the pagination of the CM/ECF filings rather than the parties' internal pagination.

Standing to bring a lawsuit is a component of a federal court's subject matter jurisdiction. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013).  The plaintiff bears the burden of proving standing, which requires a three-part showing that: (1) the plaintiff suffered or will imminently suffer an injury-in-fact; (2) a causal connection exists between this injury and the defendant's conduct; and (3) the plaintiff's injury is likely to be redressed by a favorable decision. *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) (overruled on other grounds by *Janus v. American Federation of State, Cnty., and Mun. Employees, Council 31*, 138 S.Ct. 2448 (2018)).

Attacks on subject matter jurisdiction under Rule 12(b)(1), including regarding standing, may be facial or factual.  A facial attack on subject matter jurisdiction "requires [] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted).  A factual attack, on the other hand, permits the court to consider matters outside of the pleadings. *See Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997).  "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluation for itself the merits of jurisdictional claims." *Lawrence*, 919 F.2d at 1529 (citations and quotation marks omitted).  "In a factual challenge, the district court must provide the plaintiff with an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss."

*Rance v. D.R. Horton, Inc.*, 316 F. App'x 860, 863 (11th Cir. 2008), quoting *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981).[5]

In cases where the defendant's factual attack on subject matter jurisdiction also implicates an element of the cause of action, however, "the proper course of action…is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case" under Rule 56. *Lawrence*, 919 F.2d at 1529.  Moreover, as the Eleventh Circuit has recognized, "a plaintiff must offer more to support its standing at each successive stage of the litigation," with a "more demanding approach" to standing not required at the motion to dismiss stage. *Tokyo Gwinnet, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1266 (11th Cir. 2019).  Accordingly, where a factual challenge to standing raises factual disputes that implicate the merits of a claim, some courts have deferred the issue to the summary judgment stage in order to allow the parties to complete discovery.  In *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 21-md-02994-RAR, 2022 WL 1468057, *11 (S.D. Fla. May 10, 2022), for example, the court determined that a factual challenge to the causation element of standing actually constituted an attack on the merits of the plaintiff's case, and that a factual dispute existed as to the issues raised.  The court therefore denied the motion to dismiss while waiting to resolve the remaining standing questions until "the summary judgment stage after both parties are afforded the opportunity to conduct

---

[5] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

discovery." *Id.*; *see also Houston v. 7-Eleven, Inc.*, 8:13-cv-1845-EAK-AEP, 2013 WL 6133834, *4 (Nov. 21, 2013) (Kovachevich, J.) (given the "fact-intensive nature" of the standing analysis, finding it was "more appropriate to resolve the standing issue on a full record"; denying motion to dismiss without prejudice to asserting a challenge to standing at the summary judgment stage); *Barberi v. Luisi Dollar Discount Mini Market, Inc.*, 17-20522-CIV-MORENO, 2017 WL 2651710, *3 (S.D. Fla. June 19, 2017) (same, where "given the scarce facts available…it is more appropriate to resolve the standing issue on a full record").

Turning to the case at hand, the Court will first address the argument that standing is lacking because there is no causation between any conduct of UNA and UG and the injury that SNA alleges.  Because this argument is a factual attack on subject-matter jurisdiction, [6] SNA is correct that the Court cannot dismiss the Amended Counterclaim on this basis without giving SNA the opportunity to engage in jurisdictional discovery. *See* Doc. 35 at 7, 9-10; *see Williamson*, 645 F.2d at 414. UNA and UG allege that causation is lacking because they were not involved in FSN's infringing actions.  But factual questions remain regarding the possibility that any injury to SNA is fairly traceable to *some* conduct of UNA or UG, particularly during

---

[6] The Counter-Defendants do not make a facial challenge to standing, and the Court finds that one would not have been successful even if it had been made.  The Amended Counterclaim is most reasonably read to allege that all three Counter-Defendants (referred to as "Defendants") participated in registering and using the infringing domain name. Doc. 14 ¶¶ 16, 17, 21-27.  On their face, these allegations are sufficient to establish standing. *Cf. Kawimbe v. Afr. Methodist Episcopal Church*, 1:20-cv-04711-SDG, 2022 WL 3362050, *2 (N.D. Ga. Aug. 15, 2022) (allegations on the face of the complaint demonstrated lack of jurisdiction).

the period of infringement in which it is undisputed that a corporate relationship existed between the Counter-Defendants.[7]  These questions are intrinsically tied to the elements of the causes of action against them and the ultimate question of their liability.  UNA's and UG's contentions regarding standing are thus "indirect, if not direct, attacks on the merits of [Counter-]Plaintiff's case." *See In re Mednax Servs.*, 2022 WL 1468057, *11.  Therefore, the more appropriate time to consider them is in the context of a Rule 56 motion for summary judgment, "after the parties have had the opportunity to develop the record through discovery," rather than at the motion to dismiss stage. *Id.*; *see also Oviedo Town Center II, L.L.L.P. v. City of Oviedo*, 6:16cv1005-RBD-GJK, 2016 WL 6996124, *3 (M.D. Fla. Nov. 30, 2016) (concluding that "[a]t the pleading stage, dismissal on [Article III grounds] would be inappropriate" where the complaint sufficiently alleged standing).  Accordingly, the motions to dismiss under Rule 12(b)(1) are denied without prejudice to asserting a challenge to standing at the summary judgment stage of this litigation.

The Court will next consider UNA's and UG's argument that Servco lacks standing for Counterclaim I because it did not have a distinctive mark at the time the

---

[7] SNA's opposition motions rely on a theory of vicarious liability based on potential agency relationships between FSN and the two other Counter-Defendants. Doc. 35 at 8-9; Doc. 36 at 7, 9-10.  The Court notes that the Amended Counterclaim alleges only the three parties' direct liability, rather than vicarious liability, despite its bare reference to a "partnership" between them. *See Alvarez Galvez v. Fanjul Corp.*, 533 F.Supp.3d, 1284-85 (S.D. Fla. 2021) (discussing allegations required to support vicarious liability); *compare Garcia v. Gravity Interactive, Inc.*, 10-62162-Civ-COOKE/TURNOFF, 2012 WL 13005342, *8-9 (S.D. Fla. Jan. 17, 2012) (plaintiff brought claims for vicarious trademark infringement and joint venture liability) *with* Doc. 36 at 8-9 (relying on *Garcia* in purported support for its new theory of vicarious liability).

challenged domain was registered, and therefore did not suffer an injury in fact. Doc. 23 at 9-10. This argument is a facial challenge to the pleadings rather than a factual challenge. As such, the Court must consider the allegations in the Amended Counterclaim as true. *See Mulhall v. UNITE HERE Local 355*, 618 F.3d at 1286 n.8.

For standing purposes, an "injury in fact" is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A "legally cognizable injury" requires an interest that is protected by statute or otherwise. *Cox Cable Communications, Inc. v. U.S.*, 992 F.2d 1178, 1182 (11th Cir. 1993). "That interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (citation and quotation omitted). At the pleading stage, the "injury in fact" requirement "is not particularly onerous and will be satisfied by 'general factual allegations of injury resulting from [Defendant's] conduct.'" *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1281 (M.D. Fla. 2016), *quoting Lujan*, 504 U.S. at 561.

The Amended Counterclaim alleges that the Counter-Defendants' "conduct has caused significant damage to Counter-Plaintiffs' business in an amount that is unknown at this time. Consumers looking for SERVECO have been redirected to FSN and FSN, Uniters Group, and Uniters NA have profited from such redirection." Doc. 14 ¶ 26. SNA alleges that this diversion violates the Anticybersquatting

Protection Act, "has harmed [SNA's] goodwill in its SERVECO Mark," and "has caused irreparable and substantial harm" to SNA. *Id.* ¶¶ 38-39.

Despite the allegations of injury, UNA and UG argue that SNA has not established an injury because it did not adequately allege all of the elements of a claim under the ACPA. Doc. 23 at 9-10.  Specifically, one element of an ACPA violation requires the allegedly infringed mark to have been distinctive at the time the challenged domain was registered; UNA and UG contend that "the allegations and incontrovertible evidence" show that SNA "did not have a distinctive mark at the time the challenged domain was registered." *Id.* at 10.  They rely on their arguments that SNA has failed to state a claim for Counterclaim I under Rule 12(b)(6) in purported support. *Id.* at 10 n.2.  SNA, too, cross-references its arguments in opposition to this point in both sections of its response motions, arguing that it has adequately stated a claim with respect to distinctiveness. *See* Doc. 35 at 5-6, 15.

The Court concludes that UNA's and UG's arguments are more appropriately raised under Rule 12(b)(6) than Rule 12(b)(1).  SNA has made "general factual allegations" that it was directly harmed by the Counter-Defendants' infringement of its legally protected rights under the ACPA. *See Lujan*, 504 U.S. at 560; *Cox Cable Communications*, 992 F.2d at 1182; *Bochese*, 405 F.3d at 980.  At the pleading stage, SNA's allegations of injury through a violation of the ACPA are sufficient to establish standing.  To the extent that UNA and UG argue SNA has not adequately pleaded the *elements* of a violation of the ACPA, the Court finds that this is not a subject matter jurisdiction defect.  The Court will therefore deny the motions to dismiss under Rule

12(b)(1), and instead consider the arguments in connection with the motions to dismiss under Rule 12(b)(6). *See* Section C(2), *infra*.

### B. This Court Lacks Personal Jurisdiction Over FSN.

In FSN's motion to dismiss, it first contends that the Court does not have personal jurisdiction over it. Doc. 40 at 6-8. FSN points out that neither FSN nor SNA is a Florida resident, FSN's website is not maintained in Florida, the alleged injury was not suffered in Florida, and SNA does not allege that the underlying actions occurred in Florida. *Id.* at 6. SNA provides no factual allegations that FSN conducts business in Florida or has committed tortious acts in Florida, as required by the long-arm statute. *Id.* FSN further argues that, where a plaintiff alleges that a nonresident defendant committed tortious acts in Florida based on its electronic communications into the state, the plaintiff must have been injured in Florida as a result. *Id.* at 7. But SNA is not a Florida resident and does not allege any facts that connect the alleged acts to Florida. *Id.* FSN offers the Declaration of Rex Folkerts, its CEO, who avers that FSN's sole place of business is located in North Carolina. Doc. 40-1 ¶¶ 1-2, 10. Although one of its employees resides in Florida, FSN does not subsidize this employee's personal choice to work remotely from that state, nor does it maintain office space or other facilities there. *Id.* ¶ 10. FSN also does not highlight, promote, or target business within the State of Florida, and its revenue from Florida is not disproportionate to that of other states. *Id.* ¶ 8. Folkerts concedes that FSN registered

the domain name www.serveco.net and redirected it to FSN's website, but alleges that the acts occurred solely from North Carolina. *Id.* ¶ 5.

In response, SNA argues that FSN is subject to personal jurisdiction in Florida because of "FSN's business ties to this state, including offering services in Florida and retaining Florida customers." Doc. 43 at 7-8. SNA demonstrates these ties in two ways. First, it offers the affidavit of SNA CEO Anthony Milano. Doc. 43-1 at 2-4. Milano asserts, based on his knowledge and experience in the field, that FSN has attended trade shows in Florida, has Florida companies as its customers, and has an employee who works out of the Uniters office in West Palm Beach. *Id.* ¶¶ 10-12, 6. Further, FSN maintains a page on its website that is tailored for services in Florida. Doc. 43-1 at 8-10. The webpage declares that FSN "proudly offers [its] services" to Florida residents and that it contracts with other professionals in Florida to serve customers there. Doc. 43-1 at 8-10; Doc. 43 at 5-6. According to SNA, targeting Florida residents on its website—the very website through which the tort occurred— constitutes minimum contacts such that FSN is subject to the Florida long-arm statute. *Id.* at 6-7.

Personal jurisdiction "concern[s] the extent of a court's power over the parties and fairness of requiring a party to defend itself in a foreign forum." *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir. 1988). Federal Rule of Civil Procedure 12(b)(2) allows a party to raise, by motion, the defense of lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A court must dismiss an action against a defendant over whom it lacks personal jurisdiction. *Smith v. Trans-Siberian Orchestra*,

689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999)).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The court must accept the alleged facts as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Where the defendant submits evidence to the contrary, the burden shifts back to the plaintiff, *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2000), who must then "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint," *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). A court must construe all reasonable inferences in the light most favorable to the plaintiff when confronted with conflicting evidence. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010); *Consol. Dev. Corp.*, 216 F.3d at 1291. However, any doubts about the Court's personal jurisdiction are resolved in favor of the defendant and against jurisdiction. *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007).

Determining whether personal jurisdiction exists over an out-of-state defendant involves a two-step analysis. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th

Cir. 1996).  First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum-state's long-arm statute. *See Future Tech.*, 218 F.3d at 1249.  If so, the court must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Here, the Court finds that personal jurisdiction is lacking under the first step of the analysis, because FSN is not subject to Florida's long-arm statute.  Under Florida's long-arm statute, a defendant submits itself to specific personal jurisdiction within the courts of Florida for any cause of action arising from its "operating, conducting, engaging in, or carrying on a business or business venture in [Florida]." Fla. Stat. § 48.193(1)(a)(1).  A non-resident also falls within the long-arm statute if the cause of action arises out of a tortious act committed within Florida. *Id.* at § 48.193(1)(a)(2).

The operative term with respect to the instant case is that the cause of action must "arise from" the defendant's acts in Florida. Fla. Stat. § 48.193(1).  Courts have held that this term, although broad, "requires a direct affiliation, nexus, or substantial connection to exist between the basis for the cause of action and the business activity." *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 550 (11th Cir. 2019) (citations omitted); *Damoth v. Reinitz*, 485 So.2d 881, 883 (Fla. 2d DCA 1986).[8]  Accordingly, specific personal jurisdiction is lacking where the cause of action is not substantially connected

---

[8] In contrast, the second step of the personal jurisdiction analysis, which concerns due process, requires the tort to "arise out of *or relate to*" the defendant's minimum contacts with the forum state. *See Ford Motor Co. v. Montana Eighth Judicial District Ct.*, 141 S.Ct. 1017, 1026 (2021) (interpreting "relate to" provision) (emphasis added).

to the defendant's business activities in Florida. *See*, *e.g.*, *Kenfred Enterprises, LLC v. Textron Aviation, Inc.*, 6:20-cv-1038-WWB-DCI, 2021 WL 1020969, *3 (M.D. Fla. Mar. 17, 2021) (no personal jurisdiction where plaintiff did not allege any connection between defendant's breach of contract and its offices and service centers in Florida, and the harm to plaintiff arose from defendant's activity outside of Florida); *Saft Am., Inc. v. Jabil Cir. (Guanghou), Ltd.*, 3:18cv446-TJC-JBT, 2019 WL 4600401, *6 (M.D. Fla. Sept. 23, 2019) (long-arm statute was not satisfied where none of nonresident defendant's Florida business connections were used in the transaction at issue and none of the relevant documents even referenced Florida); *Allen Sys. Grp., Inc. v. Avon Prod., Inc.*, 2:16-cv-121-SPC-CM, 2016 WL 7374512, *4 (M.D. Fla. Dec. 20, 2016) ("While Avon may maintain a broad base of sales representatives in Florida that purchase and sell its products to end-consumers, this presence does not relate to the claims in the First Amended Complaint, which hinge on proper compensation for usage of ASG software.").

SNA contends that FSN has sufficient business ties to Florida to be considered "operating, conducting, engaging in, or carrying on a business" there pursuant to the Fla. St. § 48.193(a)(1). Doc. 43 at 6. While the Court agrees that FSN has business ties in Florida, SNA has not established that those ties—including the existence of a webpage that specifically targets Florida customers—are substantially connected to the instant action, such that the action "arises from" FSN's Florida business. The Amended Counterclaim alleges that the infringing domain name, www.serveco.net, redirects to the main FSN website, www.fsnpro.com. But that website is not the one

that specifically targets Florida customers; the user must click through to access the Florida-specific page (as well as, presumably, pages related to other states).  SNA has not provided evidence that any users accessed the Florida-specific webpage after being redirected from www.serveco.net, that any Florida sales occurred after such redirection, or that any of FSN's current customers were redirected from the infringing domain. *See Volt, LLC v. Volt Lighting Group LLC*, 369 F.Supp.3d 1241, 1248 (M.D. Fla. 2019) (Merryday, J.) ("Volt presents nothing that shows VLG's website was viewed by, and confused, a Florida consumer…[or that] suggests that VLG's limited sales to Florida resulted from the allegedly infringing website."); *cf. Kumbrink v. Hygienic Corp.*, 15-Civ-23530-Cooke/Torres, 2016 WL 5369334, *2-3 (S.D. Fla. Sept. 26, 2016) (finding a "direct causal relationship between Defendant, Plaintiff, and Florida" where there was evidence that Florida residents purchased infringing goods on Defendant's website).  Even though the underlying cause of action and FSN's Florida business ties each relate to the website, they are not sufficiently connected to *each other* to confer personal jurisdiction under the long-arm statute. *See Hinkle*, 775 F. App'x at 550 ("The Hinkles' harm may have arisen from Cirrus activity outside of Florida that was like some of Cirrus's activities in Florida—Cirrus sells, promotes, and services its aircraft in Florida, and the Hinkles were allegedly harmed by a Cirrus aircraft—but that cannot be enough.").

Moreover, SNA has not established that FSN committed a tortious act within Florida. Fla. Stat. § 48.193(1)(a)(1).  As SNA correctly notes, a nonresident defendant can commit a tortious act in Florida "through telephonic, electronic, or written

communications into Florida so long as the cause of action arises from these communications." Doc. 43 at 7; *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002). In this scenario, however, Florida must also be the place of injury. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (infringement of trademark held by Florida resident constitutes a tortious act "within the state" that triggers the long-arm statute); *Internet Solutions v. Marshall*, 39 So.3d 1201, 1208 (Fla. 2010) (defamatory statements about Florida resident fall under the long-arm statute if the material is posted on a website that is not only accessible in Florida but also *accessed* in Florida); *Elkins v. Abbvie, Inc.*, 6:20-cv-01562-PGB-LHP, 2021 WL 2823444, *4 (M.D. Fla. Mar. 11, 2021) (no specific personal jurisdiction for claims of nonresident plaintiffs who underwent the medical procedure at issue outside of Florida); *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1324-25 (S.D. Fla. 2009) (the misrepresentations and interference with plaintiff's business relations alleged in the cause of action injured plaintiffs in Argentina and Uruguay, where they resided, rather than in Florida); *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 137 S.Ct. 1773 (2017) (in a class action, rejecting specific personal jurisdiction for claims of nonresident plaintiffs who failed to establish requisite connection between their claims and the forum state).

SNA is not a Florida resident, which means that the mere allegation that it has been injured is not enough to constitute an injury within Florida. And, again, SNA fails to point to any specific instances of infringing conduct that impacted Florida or its residents. Nor does SNA make factual allegations that refute FSN's evidence that

the infringing acts, such as the registration of the domain name and maintenance of the website, occurred outside of Florida. *See* Doc. 40-1 ¶ 5. Accordingly, SNA has not adequately alleged that FSN committed a tortious act within Florida. The instant claims do not confer specific personal jurisdiction over FSN under Florida's long-arm statute.

Although SNA does not argue for it, the Court will also consider whether general personal jurisdiction applies. A nonresident defendant is subject to general personal jurisdiction under Florida's long-arm statute if it "is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise… whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). A defendant will be subject to general jurisdiction only in its place of incorporation, principal place of business, or where its operations are "so substantial and of such a nature as to render the corporation at home" there. *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017); *see Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (describing the "heavy burden of establishing such an exceptional case").

The Court finds that general personal jurisdiction is not applicable. *See* Doc. 14 ¶ 10. FSN is not incorporated in Florida and does not have its principal place of business there. While it has some business ties to Florida, "even substantial, continuous, and systematic business is insufficient to make a company at home in the state." *Waite*, 901 F.3d at 1318, quoting *Daimler AG v. Bauman*, 517 U.S. 117, 138

(2014).  FSN's activities in the state of Florida are therefore not "so substantial" as to render it "at home" there. *Tyrrell*, 137 S.Ct. at 1558.[9]

Because the claims against FSN do not fall within any provision of Florida's long-arm statute, the Court will not reach the second step of the personal jurisdiction analysis. *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 551 ("Where, as here, the requirements of the Florida long-arm statute have not been met, we need not address whether application of that statute in this case would meet federal constitutional due process requirements.").  The claims against FSN are therefore due to be dismissed.

For this reason, the Court will not decide FSN's arguments for dismissal based on misjoinder and improper venue. *See* Doc. 40 at 9-10.

### C. SNA Fails to State a Claim for Counterclaim I, But Has Adequately Pleaded Counterclaim II.

All three Counter-Defendants also move to dismiss the counterclaims under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain

---

[9] In its Amended Counterclaim, SNA also makes the conclusory assertion that the Court has personal jurisdiction over FSN because FSN "is a wholly owned subsidiary of Uniters Group [and] a partner to Uniters NA," both of whom are headquartered in Florida. Doc. 14 ¶ 10. While SNA does not argue this basis for personal jurisdiction in its opposition to FSN's motion to dismiss, the Court finds that it is without merit.  "Under the Florida long-arm statute, a non-resident corporation is not subject to personal jurisdiction simply because a related entity is present in Florida." *Sompo Japan Nipponkoa Ins., Inc. v. CSX Transportation, Inc.*, No. 3:19-CV-1154-MMH-PDB, 2020 WL 7074558, at *7 (M.D. Fla. Dec. 3, 2020) (citation and quotations omitted); *see also Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.") (citing *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337 (1925)).

statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).   Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also inadequate. *Id.*   A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).   The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### 1. *FSN's Extrinsic Evidence Does Not Warrant Dismissal of the Counterclaims.*

The Court will first address FSN's 12(b)(6) argument, to the extent that it applies to the sufficiency of the claims against the remaining Counter-Defendants.   FSN argues that both counterclaims must be dismissed under Rule 12(b)(6) because extrinsic evidence "indisputabl[y]" proves that SNA's assertions are false. Doc. 40 at 10.   FSN relies on  internet evidence which allegedly proves that SNA did not begin conducting business on www.serveco.com and marking its name and logo with "TM" until May 2021; before that time, it was operated only by ServeCo International, Inc. *Id.* at 10-12.   Accordingly, contrary to SNA's factual claims, SNA's mark was not distinctive at the time of the 2018 registration of the allegedly infringing domain name.

*Id.* Responding to these arguments, SNA asserts that it was indeed the entity who operated the website and used the mark. Doc. 43 at 12-13.

A threshold question is whether the Court may consider FSN's extrinsic evidence without converting the motion to a motion for summary judgment under Rule 12(d), which this Court declines to do. In a motion to dismiss under Rule 12(b)(6), the Court may consider a document outside of the pleadings only if it is (1) central to the plaintiff's claim, and (2) undisputed, which means its authenticity is not challenged. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

With respect to the first prong, FSN argues that its internet evidence—historical screenshots of the SNA website taken from the Internet Archive's WayBack Machine—is incorporated by reference in the Amended Counterclaim, and that it is central to SNA's claim that it possesses trademark rights in the SERVECO mark. Doc. 43 at 11-12. A screenshot of the current website is attached to the Amended Counterclaim, and SNA alleges that it has used the domain name and its trademark exclusively and continuously in commerce over the past five years. Doc. 14 ¶¶ 12-13. SNA's use of its mark at that domain name during the past five years is a fundamental component of the counterclaims. The Court agrees that the historical content of the website and mark during that time frame are incorporated by reference in and central to the Counterclaim. *See Day v. Taylor*, 400 F.3d 1272, 1274-76 (11th Cir. 2005) (contract was central to the complaint when the complaint referenced it and claims directly related to it).

The second prong of the analysis is less clear.  FSN asserts that the screenshots' authenticity is undisputed because courts have held that Internet Archive's WayBack Machine is not subject to a genuine dispute of fact. Doc. 43 at 12.  SNA does not dispute their authenticity.  However, contrary to FSN's arguments, many courts have found that content from the WayBack Machine is not self-authenticating. *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 583-84 (5th Cir. 2022) (as the first Circuit Court of Appeals to squarely address the issue, holding that results from the WayBack Machine are not self-authenticating); *see also*, *e.g.*, *Gilfus v. McNally Capital, LLC*, 8:18-cv-2941-CEH-CPT, 2022 WL 4079587, *3 (M.D. Fla. Sept. 6, 2022) (Honeywell, J.) (printouts from the WayBack Machine must be authenticated by an affidavit from someone with personal knowledge of how the Wayback Machine functions, such as an Internet Archive employee); *Nassar v. Nassar*, 3:14-cv-1501-MMH-MCR, 2017 WL 26859, *5 (M.D. Fla. Jan. 3, 2017) (finding that judicial notice of WayBack Machine results is inappropriate; noting that the website's publisher disclaims any guarantee that its results are accurate).  Further, the sole case on which FSN relies did not decide the question of whether WayBack Machine screenshots can be considered an "undisputed" document for the purpose of a motion to dismiss under Rule 12(b)(6). *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716-718 (N.D. Fla. 2019).  The weight of authority suggests that WayBack Machine screenshots, alone, do not carry sufficient authenticity to be considered "undisputed" in the 12(b)(6) context.

Even if the Court were to consider this evidence, however, it would find that it does not provide a basis for dismissal under Rule 12(b)(6).  The screenshots

demonstrate that a SERVECO mark was being used at www.serveco.com since at least 2018. Doc. 40-2; Doc. 40 at 12.   The site advertised the services of ServeCo International, Inc until May 2021, at which point ServeCo North America's name appeared instead. Doc. 40-2 at 19-21.   According to FSN, this is proof that SNA did not begin conducting business under the SERVECO mark until well after the registration of the domain www.serveco.net in 2018. Doc. 40 at 13.   This purportedly demonstrates that SNA lacks enforceable trademark rights, which precludes both of its counterclaims. *Id.*   The Court disagrees.   While the relationship between SNA and ServeCo International is unclear at this stage, the two entities are plainly related in some manner. *See* Doc. 1 ¶¶ 8-9 (Complaint alleging that they have the same principal place of business and CEO).   SNA alleges in its opposition motion that SNA was indeed the entity that operated and conducted business on the website since at least 2018, despite references to ServeCo International, LLC that were made merely "for marketing purposes." Doc. 43 at 12-13.   It is neither impossible nor implausible that SNA still established prior ownership rights to the mark, just as it alleged in the Amended Counterclaim.

At most, the extrinsic evidence raises a question of fact as to whether SNA has enforceable rights to the SERVECO domain or mark.   But at the motion to dismiss stage the Court cannot adjudicate questions of fact or even determine whether SNA is likely to prevail on its claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and

unlikely.") (citations omitted).   FSN's motion to dismiss under Rule 12(b)(6) is therefore due to be denied.

### 2. *Counterclaim I Fails to State a Claim for A Violation of the ACPA.*

UNA and UG argue that SNA has failed to state a claim for each of its counterclaims for different reasons than FSN.  With respect to Counterclaim I, the violation of the Anticybersquatting Protection Act, they contend that SNA made no factual allegations to support its claim that the domain was registered with a bad faith intent to profit. *Id.* at 17-18.  They also reiterate the argument about distinctiveness that they raised in connection with standing. Doc. 23 at 16-17.

SNA responds that it has satisfied the pleading requirements of Rule 8 regarding Counterclaim I. Doc. 35 at 14-17.   In addition to the arguments regarding distinctiveness that it made in connection with standing, SNA points out that the ACPA itself provides that an "intent to divert consumers from the mark owner's online location to a site accessible under the domain name…by creating a likelihood of confusion"—the very action alleged in the instant action—is evidence of bad faith. *Id.* at 15-16.

A plaintiff proceeding under the ACPA, 15 U.S.C. § 1125(d), must prove the following elements: (1) that its trademark was distinctive when the defendant registered the challenged domain name; (2) that the domain name is identical or confusingly similar to the plaintiff's trademark; and (3) that the defendant registered the domain name with a bad faith intent to profit. *Boigris v. EWC P&T, LLC*, 7 F.4th

1079, 1085 (11th Cir. 2021); *see also Topic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 609, 609-10 (11th Cir. 2014).

First, the Court finds that SNA has pleaded sufficient facts to establish that the domain was registered with a bad faith intent to profit.  Contrary to UG's and UNA's assertions, the ACPA does not solely address the scenario in which the cybersquatter demands remuneration in exchange for the domain name. *Cf.* Doc. 27 at 17.  "As the Tenth Circuit has explained, '[a] defendant could also intend to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's.'" *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1247 (11th Cir. 2009), quoting *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1058 (10th Cir. 2008).  The ACPA expressly lists the intentional diversion from the mark owner's online location to a different site as one factor demonstrating that the defendant acted with bad faith intent to profit. 15 U.S.C. § 1125(d)(1)(B)(i)(V).  Further, the Eleventh Circuit has made clear that the analysis of bad faith "is not based on a score card of the statutory factors," but rather an individual determination of bad faith in light of the unique circumstances of each case. *See Pensacola Motor Sales Inc. v. Eastern Store Toyota, LLC*, 684 F.3d 1211, 1223 (11th Cir. 2012) (citations omitted).

The statutory factors and circumstances of this case plausibly allege a bad faith intent to profit.  SNA alleges that the Counter-Defendants registered the domain name without SNA's consent. Doc. 14 ¶ 31.  The domain name also does not reference the

Counter-Defendants' own corporate names. *Id.* ¶¶ 23, 33; *see* 15 U.S.C. § 1125(d)(1)(B)(i)(II) (another factor evidencing bad faith). Instead, it references the corporate name of their direct competitor, bearing such a strong resemblance to the domain name of their direct competitor's website as to create a likelihood of confusion. Doc. 14 ¶¶ 15, 38; 15 U.S.C. § 1125(d)(1)(B)(i)(V). The domain name then redirects users to the website maintained by Counter-Defendants, thereby diverting potential customers to a competing website. *Id.* SNA has alleged adequate facts to establish that the Counter-Defendants acted with a bad faith intent to profit. *See 411 Kitchen Cabinets LLC v. King of Kitchen and Granite Inc.*, 16-80206-Civ-Rosenberg/Brannon, 2016 WL 7335840, *4 (S.D. Fla. Oc. 25, 2016) (plaintiff adequately alleged bad faith intent to profit where defendant had no known ties to the name of its competitor, but used a domain name related to that name to divert customers to its own website).

However, SNA has not adequately alleged the first element of a violation of the ACPA: that the mark was distinctive when defendant registered the infringing domain name. A distinctive mark "serves the purpose of identifying the source of the goods or services." *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). Some marks are inherently distinctive, while others can acquire distinctiveness, or "secondary meaning," by becoming associated in the minds of the public with the products or services offered by the mark's proprietor. *Id.* Although distinctiveness is a question of fact, *id.*, a court ruling on a motion to dismiss must determine whether the plaintiff has adequately alleged facts upon which to conclude the mark is distinctive. *See*, *e.g.*, *Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 611-12 (11th Cir. 2014)

(analyzing allegations regarding distinctiveness at motion to dismiss stage); *Casey Key Resort, LLC v. CK Resorts JV, LLC*, 8:21-cv-1446-JLB-JSS, 2021 WL 4893682, *4 (M.D. Fla. Oct. 20, 2021) (same, concluding the allegations indicated the marks were not inherently distinctive and did not establish that they were suggestive); *cf. Galaxy America v. EZ Inflatables, Inc.*, 2:19-cv-855-JES-MRM, 2021 WL 1909647, *10-11 (M.D. Fla. May 12, 2021) (in a trade dress suit, complaint adequately and plausibly alleged that plaintiff's trade dress was inherently distinctive based on its detailed factual allegations).

The Amended Counterclaim alleges, in conclusory fashion and without specifying a time frame, that the SERVECO mark was "well known and distinctive." Doc. 14 ¶ 38.  It also alleges that the mark "gained secondary meaning" through exclusive and continuous use in commerce "over the past five (5) years via its website, trade publications, trade shows and social media." *Id.* ¶ 13.  SNA has used the mark since "at least as early as 2017," *id.* ¶ 12, which was five years before the filing of the Amended Counterclaim.  These allegations are inadequate because SNA fails to allege specifically that the mark was distinctive on the date the infringing domain name was registered, July 4, 2018. *Id.* ¶ 16.

Although SNA is correct that obtaining secondary meaning is not the only way that a mark can be distinctive,[10] its Amended Counterclaim fails to plead facts to

---

[10] For this reason, the Court rejects UNA's and UG's assertion that the allegations in the Amended Counterclaim *preclude* a finding that the mark was distinctive at the time of registration. Doc. 27 at 16-17.

support any other methods, such as the new assertion in its opposition that the mark is inherently distinctive. Doc. 35 at 5-6. In the absence of such factual allegations, the Amended Counterclaim fails to state a claim for a violation of the ACPA. *See Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 611-12 (11th Cir. 2014) (upholding Rule 12(b)(6) dismissal where allegations were insufficient to state a claim that the mark had secondary meaning when the domain name was registered or that the mark was inherently distinctive). Dismissal is warranted.

### 3. *Counterclaim II Adequately States a Claim Under § 1125(a).*

With respect to Counterclaim II, UNA and UG contend that SNA fails to state a claim under 15 U.S.C. § 1125(a) because it did not adequately allege that the infringing mark is used in commerce. Doc. 23 at 18-19. Rather, the challenged domain automatically redirects traffic to a *different* website through which goods and services are offered. *Id.* According to UNA and UG, the elements of a claim under 15 U.S.C. § 1125(a) therefore are not satisfied. *Id.* SNA does not substantively respond to this argument.

To make out a claim under 15 U.S.C. § 1125(a), a plaintiff must allege (1) that the defendant "in connection with…goods or services… use[d] in commerce" the mark at issue, and (2) that such use was "likely to cause confusion [or] mistake" as to its affiliation or origin. 15 U.S.C. § 1125(a)(1). The Eleventh Circuit has held that the term "use in commerce" in this provision of the Lanham Act is a jurisdictional prerequisite that "denotes Congress's authority under the Commerce Clause rather than an intent to limit [its] application to profit making activity." *Planetary Motion, Inc.*

*v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001) (citations and quotations omitted).  Accordingly, the term is "broad in scope," covering "all commerce which may lawfully be regulated by Congress." *Id.*

Contrary to UG's and UNA's arguments, courts have readily found that redirecting traffic from an infringing domain name to the defendant's own commercial website constitutes the requisite "use in commerce" for a claim under § 1125(a).  In *Sound Surgical Technologies, LLC v. Leonard A. Rubinstein, M.D., P.A.*, 734 F.Supp.2d 1262, 1269-70 (M.D. 2010) (Whittemore, J.), for example, the court concluded that channeling internet traffic to the website for defendants' medical practice, on which defendants advertised a competing service, satisfied the use in commerce requirement. *See also Platinum Properties Investor Network, Inc. v. Sells*, 18-61907-CIV-SMITH, 2021 WL 4429067, *7 (S.D. Fla. Feb. 9, 2021) (finding use in commerce where defendant redirected traffic from infringing domain names to its own website in order to intercept plaintiffs' potential clients and harm plaintiffs commercially; although there was no direct evidence of profit, defendants considered this conduct helpful to their own business); *ZP No. 314, LLC v. ILM Capital, LLC*, 335 F.Supp.3d 1242, 1267 (S.D. Ala. 2018) (defendants' redirection of domain names to its own website was indisputably a use in commerce; a question of fact remained as to whether defendant "used" the names when it re-registered them without redirection); *Pedmed Express, Inc. v. Medpets.com, Inc.*, 336 F.Supp.2d 1213, 1218 (S.D. Fla. 2004) (finding that "[i]n establishing a website on the internet, Defendants have used the infringing marks in commerce.").  In contrast, in *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235,

1250-51 (11th Cir. 2009), there was no use in commerce where the defendant had registered an allegedly infringing domain name but had not created a website associated with it.  In affirming summary judgment, the court noted that there was no admissible evidence that the domain name redirected traffic to its own commercial website. *Id.* at 1250.

The allegations in the Amended Counterclaim adequately establish that the Counter-Defendants used the infringing mark in commerce.  Plaintiff alleges that the infringing domain name, www.serveco.net, automatically redirects to the Counter-Defendants' own website, on which they sell products and conduct their business. Doc. 14 ¶¶ 15, 17, 26, 43; *see* Doc. 27 at 18 (conceding that "commerce is conducted" on the FSN website).[11]  The Court rejects the argument that using the infringing domain name to divert potential customers from SNA's website to the commercial website of FSN, their direct competitor, is not a "use in commerce" because of the redirection.  Plainly, any sales that are made on www.fsnpro.com by a customer who arrived there via www.serveco.net are a result of the allegedly infringing domain name.  Just as other courts have held, this redirection constitutes a use in commerce. SNA has therefore adequately stated a claim for Counterclaim II, and the motions to dismiss that count are due to be denied.

---

[11] SNA's claim in its opposition that it is "also likely" that the Counter-Defendants used the SERVECO mark in its metatags to drive traffic to the FSN website is a new factual allegation that is not contained in the Amended Counterclaim, and thus cannot be considered in this Order. Doc. 35 at 16.

**D. The Permissive Nature of the Counterclaims Is Not a Basis for Dismissal.**

Lastly, all three Counter-Defendants contend that the counterclaims are only permissive, rather than compulsory, and that they are insufficiently related to the underlying action to warrant the Court's exercise of supplemental jurisdiction. Doc. 23 at 22-23; Doc. 40 at 14-16. SNA responds that the counterclaims are compulsory because there is a logical relationship between two trademark infringement actions that concern Uniters entities and Serveco entities, both of which will involve trademark case law and a determination of the relationships between the parties. Doc. 43 at 15-18; Doc. 35 at 12. In any event, SNA requests that the Court exercise its discretion to hear the counterclaims if it determines they are permissive in order to permit the efficient resolution of all controversies between the parties in a single suit. *Id.* at 12-14; Doc. 43 at 16-17.

Under Rule 13(a), Federal Rules of Civil Procedure, a counterclaim is compulsory if it: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction. Fed. R. Civ. P. 13(a)(1). The Eleventh Circuit applies the "logical relationship" test to determine whether a counterclaim is compulsory. "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp. v. Lifemark Hospitals of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985) (citation and quotations omitted).

Applying the logical relationship test, the Court finds that SNA's counterclaims are not compulsory because they do not arise from the same set of operative facts. While both claims involve trademark disputes between related parties, their underlying facts are very different. One alleges infringement of a physical product, while the other is a cybersquatting claim alleging infringement of a domain name. The facts to be decided in the two cases are unlikely to overlap at all. SNA's counterclaims are therefore permissive rather than compulsory. *See* Fed. R. Civ. P. 13(b) (defining "permissive counterclaim" as "any claim that is not compulsory").

The parties next dispute whether the Court should, in its discretion, exercise supplemental jurisdiction over the permissive counterclaims. Doc. 23 at 21-22; Doc. 35 at 12-14. But the discretionary exercise of supplemental jurisdiction is necessary only when the Court does not have an independent basis for federal jurisdiction over the counterclaims. *See East-Bibb Twiggs Neighborhood Ass'n v. Macon Bibb Planning & Zoning Com'n*, 888 F.2d 1576, 1578 (11th Cir. 1989) (before the enactment of 28 U.S.C. § 1367, concluding a federal court cannot consider a permissive counterclaim unless the counterclaimant asserts an independent jurisdictional basis); 28 U.S.C. § 1367(a) (providing for supplemental jurisdiction of claims that are part of the same case or controversy as those of an action of which the court has original jurisdiction, but permitting the court to decline to exercise its supplemental jurisdiction in certain circumstances). *Morales v. MRS BPO, LLC*, 8:19-cv-02717-MSS-CPT, 2020 WL 10357242, *2 (M.D. Fla. Aug. 13, 2020) (Scriven, J.), on which UG and UNA rely, is inapposite because the district court was asked to consider a permissive counterclaim

involving state law, which, in the absence of diversity jurisdiction, would have required the court to exercise supplemental jurisdiction. *Id.* at *2 ("there is no question that Synchrony's Counterclaims would not elicit the Court's original jurisdiction"); *see also*, *e.g.*, *Rice v. Island Home and Properties, LLC*, 8:21-cv-1835-VMC-TGW, 2022 WL 356204, *3-4 (M.D. Fla. Feb. 7, 2022) (Covington, J.) (where there was no independent basis for federal jurisdiction over the counterclaim, concluding the court lacked supplemental jurisdiction because it did not share a common nucleus of operative fact with the original claims); *Young v. Axis Welding & Machine Works, Inc.*, 1:18-cv-87-TFM-B, 2019 WL 1995335 (S.D. Ala. May 3, 2019) (same).

Here, however, SNA's counterclaims arise under federal trademark law, thereby invoking this Court's federal question jurisdiction under 28 U.S.C. § 1331. Because the Court has original jurisdiction over the permissive counterclaims, the statute providing for discretionary supplemental jurisdiction does not apply.

The broad language of Rule 13(b) encourages defendants to bring counterclaims that involve the opposing party regardless of their connection to the underlying suit, "in order to dispose of all points of controversy between the litigants in one action, thereby avoiding the cost of multiple suits." *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1420 (3d ed. 1998); *Major Appliance Co. v. Gibson Refrigerator Sales Corp.*, 254 F.2d 497, 502 (5th Cir. 1958) (holding it would be "inequitable" and "in derogation of Rule 13" to not accord defendant the right to assert

its counterclaims if it desired to do so).[12]   Accordingly, the Court concludes that the permissive nature of the counterclaims does not present a basis for dismissal.

### III.   CONCLUSION

The Counter-Defendants' respective motions to dismiss are each granted-in-part and denied-in-part.   FSN's motion to dismiss is granted for lack of personal jurisdiction, and is otherwise denied.   UNA's and UG's motions to dismiss are granted to the extent that the Court will dismiss Counterclaim I for failure to state a claim. UNA's and UG's motions to dismiss for lack of standing are denied without prejudice.

Moreover, based upon SNA's consent, the Court will grant UNA's motion to dismiss all counterclaims against Uniters SpA.  *See* Doc. 35 at 3.  Similarly, the Court will grant UNA's and UG's motions to dismiss Counterclaim III with respect to all parties. *Id.*

The motions are denied in all other respects.

---

[12]A limited number of district courts have concluded that a court has discretion to dismiss a permissive counterclaim over which it has independent jurisdiction if the counterclaim would "unduly complicate the litigation." *Intec, Inc. v. Monster Cable Products, Inc.*, 10-22772-CIV-MARTINEZ/MCALILEY, 2012 WL 13008748, *2 (S.D. Fla. March 12, 2012); *Southern Co-op Development Fund v. Driggers*, 527 F.Supp. 927, 930 (M.D. Fla. 1981) (holding that "[t]he Court is of the opinion that separate trials would entail very little duplication of evidence and that the counterclaim unduly complicates this case…[so] the Court has discretion to dismiss it[,]" but citing conflicting authority and noting that a Fifth Circuit decision had left the issue open).  This Court concludes, however, that the plain language of Rule 13(b) and the weight of the authority do not support this view, and that, in any event, the counterclaims presented in the instant action are not so complicated as to warrant taking the unusual action of dismissal.

Accordingly, it is **ORDERED:**

1. Uniters S.P.A. and Uniters North America's Motion to Dismiss Counterclaims (Doc. 23) is GRANTED-IN-PART and DENIED-IN-PART.  The motion is GRANTED in the following respects, and is in all other respects DENIED:

   a. All counterclaims against Uniters SpA are DISMISSED.

   b. Counterclaim I is DISMISSED.

   c. Counterclaim III is DISMISSED.

2. Uniters Group, LLC's Motion to Dismiss Counterclaims (Doc. 27) is GRANTED-IN-PART and DENIED-IN-PART.  The motion is GRANTED in the following respects, and is in all other respects DENIED:

   a. Counterclaim I is DISMISSED.

   b. Counterclaim III is DISMISSED.

3. Furniture Solutions Network, LLC's Motion to Dismiss Counterclaims (Doc. 40) is GRANTED-IN-PART and DENIED-IN-PART.  The motion is GRANTED to the extent that all counterclaims against Furniture Solutions Network are DISMISSED for lack of personal jurisdiction.  The motion is in all other respects DENIED.

   **DONE** and **ORDERED** in Tampa, Florida on September 26, 2022.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record; Unrepresented Parties